UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24793-MORENO/LOUIS

LLANDEL VEGUILLA,
Professionally known as "YANDEL,"

    Plaintiff,

vs.

EDGAR ANDINO, and
ANDINO MARKETING GROUP, INC.,

    Defendants.
_____/

ANDINO MARKETING GROUP, INC.,

    Counter-Plaintiff,

vs.

LLANDEL VEGUILLA,
Professionally known as "YANDEL,"

    Counter-Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause came before the Court upon Plaintiff's Motion for Partial Summary Judgment on Counts 2 and 4 of Amended Complaint and Counts I-IV of the Counterclaim (ECF No. 38) and Defendants' Motion for Summary Judgment (ECF No. 41). This action was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge, for all pretrial matters (ECF No. 24). These Motions were fully

briefed and, on June 18, 2019, the undersigned conducted oral argument on the issues raised therein. Upon consideration of the pertinent parts of the record, the parties' arguments at the hearing, and being otherwise fully advised in the premises, for the reasons stated at the conclusion of the hearing and further elaborated upon here, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment (ECF No. 38) be **GRANTED** as to Counts I-IV of the Counterclaim. The undersigned further recommends, in regard to Plaintiff's Motion for Partial Summary Judgment on Counts II and IV of the Amended Complaint and Defendants' Motion for Summary Judgment on all counts of the Amended Complaint (ECF No. 41), that both Motions be **DENIED** as to Count II, and **DENIED as moot** as to Counts I, III, and IV, of the Amended Complaint.

## I.   BACKGROUND[1]

Llandel Veguilla ("Veguilla" or "Plaintiff") is a successful, Grammy Award-winning recording artist. Edgar Andino ("Andino" or "Defendant") is the founder and principal owner of Andino Marketing Group, Inc. ("AMG" or "Defendant/Counter-Plaintiff"), a management and consulting company that provides personal management services to individuals and companies in the music industry. In October 2017, Veguilla asked Andino to serve as his manager and consultant in connection with his musical career, with Andino's compensation to be based on a percentage of Veguilla's earnings. Andino agreed. The oral agreement had no set duration and was never reduced to writing.

For approximately eleven months, Andino rendered advice and counsel to Veguilla regarding all aspects of the entertainment industry, including but not limited to providing advice

---

[1]   The facts are undisputed unless otherwise noted.

2

about material, recordings, compositions, and personal matters. One of the activities that Andino was involved with on behalf of Veguilla was negotiating (along with Veguilla's attorney and others) with several entertainment companies including The Orchard, Sony/ATV, Sony Latin, and Live Nation about exploitation of Veguilla's music. For his work during this period, Andino received commissions that were equal to 7% of Veguilla's earnings, in a total amount that exceeded $85,000.

On September 5, 2018, Veguilla informed Andino he was terminating their agreement and would not pay Andino any additional commission. Sometime thereafter, Veguilla signed lucrative contracts with the aforementioned entertainment companies (the "entertainment industry contracts").

On November 27, 2018, Veguilla filed an Amended Complaint against Andino and AMG in this Court (ECF No. 7). Veguilla alleged the following: (1) Andino worked as his personal manager and talent agent but breached his fiduciary duty to Veguilla, in part by failing to obtain the license required by Florida's Talent Agency Act (the "Act"), Fla. Stat. § 468.401, *et seq.* (Count I); (2) Andino and/or AMG (as alter egos) performed the services of a "talent agent" without obtaining a talent agency license as required, and thus were unjustly enriched by, and should be required to disgorge, all the commissions they were paid (Count II); (3) an equitable accounting is required from both Andino and AMG to determine the amount of the commissions they received (Count III); and (4) the Court should grant declaratory relief and determine that Andino and AMG are not entitled to any commission from Veguilla's income, whether before or after termination, because Andino and AMG failed to comply with the licensing requirement for talent agents in Florida (Count IV).

Andino and AMG jointly filed an Answer and Affirmative Defenses (ECF No. 9 at 1-9). In addition, AMG - but not Andino - filed a four-count Counterclaim against Veguilla (ECF No. 9 at 10-20). AMG alleged that: (1) Veguilla breached, and continues to breach, the parties' management agreement by refusing to pay commissions as required under the agreement (Count I); (2) AMG is entitled to recover in *quantum meruit* for services provided to Veguilla for which payment was not been made (Count II); (3) the Court should determine as a matter of law that AMG is entitled to a commission on all contracts that Veguilla entered into or were substantially negotiated during the term of the parties' agreement, including those that Veguilla signed after AMG was terminated (Count III); and (4) that an accounting of Veguilla's earnings is required (Count IV). As noted, because only AMG brought the counter-suit against Veguilla, Andino does not assert any claims against him.

Veguilla moves for partial summary judgment on Counts II and IV of the Amended Complaint and on all four counts of the Counterclaim. Much of his argument relies on application of the Talent Agency Act. He contends that the work AMG performed on his behalf constituted activities that fell within the ambit of the Act and required a talent agent license. Because the work was performed without a license, it was illegal; therefore, he argues, not only is AMG not entitled to any additional payments, the commissions previously paid are subject to disgorgement.

In addition, Veguilla challenges AMG's entitlement to relief under the oral agreement on a number of grounds. One of those arguments goes to the heart of this case, namely, whether an enforceable oral agreement between these parties even exists. As discussed below, the undersigned's determination of this issue is dispositive.

Veguilla argues that an enforceable oral agreement does not exist as the parties never discussed, let alone reached agreement on, all the essential terms of the agreement, in particular,

4

the duration of the agreement; how Andino's commissions would be calculated; and whether commissions would be paid after the agreement was terminated. According to Veguilla, those were essential terms on which agreement was required in order to form a valid, enforceable contract. In the absence of mutual assent as to each of those essential terms, Veguilla insists that AMG cannot establish the existence of an enforceable oral agreement and thus its claims for relief based on that agreement (including the *quantum meruit* claim which Veguilla asserts is also based on that agreement) fail as a matter of law.

Andino and AMG filed their own motion for entry of judgment on the four counts of the Amended Complaint. The thrust of their argument is that the undisputed evidence shows that neither was subject to the licensure requirement of the Act, and because Veguilla cannot establish a violation of the Act, his arguments fail as a matter of law. Andino and AMG also insist that the parties' agreement did call for payment of post-termination commission based on contracts that were substantially negotiated, even though not executed, prior to the date of termination.

**II.    ANALYSIS**

   **A.    Legal Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).

In considering a motion for summary judgment, the Court must evaluate the evidence and draw all inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. A court will not weigh conflicting evidence at this stage of the proceeding. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). If the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a

triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### B. Discussion

The undersigned turns first to Plaintiff's Motion for Summary Judgment on the four counts of AMG's Counterclaim. Again, Counts I, III, and IV of the Counterclaim are premised on the existence of an enforceable oral agreement pursuant to which Veguilla allegedly was to pay AMG, for management and consulting services, a commission of 15% of all gross compensation that Veguilla received pursuant to any contracts then in existence (in October of 2017), and any contracts entered into or negotiated during the term of the parties' agreement, with all commissions to continue even after the parties' agreement ended. In Count II of the Counterclaim, AMG seeks, alternatively, recovery in *quantum meruit* for personal management services provided to Veguilla between October 2017 and September 2018, in particular, AMG's substantial assistance in negotiating the entertainment industry contracts that were executed shortly after his termination, from which Veguilla received, and continues to receive, financial benefit.

  1. Plaintiff's Motion for Summary Judgment on All Counts of the Counterclaim

    a. Counts I, III, and IV of the Counterclaim

Under Florida law, to prevail on a breach of contract claim, a party must first establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). To prove the existence of a contract, the plaintiff must establish (1) an offer; (2) an acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Id.*

The agreement at issue here was oral. An agreement need not be reduced to writing to be valid and enforceable. *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1229 (11th

Cir. 2000). However, "to form an enforceable oral contract, 'there must be a meeting of the minds on all essential terms and obligations of the contract.'" *Id*. (quoting *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990)) (a court will find a valid agreement exists where the evidence shows the parties intended to be bound at the time they entered into their oral agreement). That is, the evidence must show that "the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (citation omitted) (price, and the amount of a brokerage commission, are two examples of an essential term). It is not necessary for all details of the agreement to be fixed, but "if there has been no agreement as to essential terms, an enforceable contract does not exist." *Irby v. Memorial Healthcare Group, Inc.*, 901 So. 2d 305, 306 (Fla. 1st DCA 2005) (citation omitted) (affirming summary final judgment on breach of contract claim in part because alleged employment agreement lacked numerous essential terms including compensation, benefits, and other employment terms).

Veguilla argues that the unrebutted evidence shows the parties never discussed, let alone reached agreement on, all essential terms of the agreement. It is undisputed that no writing memorializes the exact terms of the parties' oral agreement. Given the absence of a writing that evidences the clear intent of these parties, the burden shifts to AMG to point to specific evidence in the record that shows there was a meeting of the mind on all essential terms of the parties' agreement and that an enforceable oral contract exists.

AMG asserts that the parties' understanding was memorialized in numerous electronic mail messages and communications. After thoroughly reviewing the evidence in the light most favorable to AMG, drawing all inferences in AMG's favor, the undersigned finds that AMG's position is unsubstantiated by the record. Rather, the evidence establishes that the parties failed to

agree on several material terms at issue.

In opposing Veguilla's summary judgment motion, AMG submitted a declaration from Andino dated May 8, 2019 (ECF No. 50-1) that allegedly reflects the terms the parties discussed and agreed upon. Specifically, Andino avers that he and Veguilla discussed and agreed to the following: that AMG would work as Veguilla's personal manager and consultant and receive as compensation 15% of all gross compensation received by Veguilla as a result of his activities in the entertainment industry, from contracts in existence at that time as well as contracts that were entered into or negotiated during the term of the parties' agreement, and further, that said compensation would continue following expiration or termination of the agreement (*id.* at 1-2 ¶ 9, at 6-7 ¶ 46).

Veguilla, of course, offers his own affidavit that directly contradicts Andino's statements about what the parties agreed to, including how the commission would be calculated, what it was intended to apply to, and for what term. Veguilla states that Andino or AMG acted as his manager and talent agent, and that Andino's or AMG's commission was to be based on a percentage of his (Veguilla's) net income derived from some of his engagements as a performing artist in the music industry. (ECF No. 54-3 at 2 ¶¶ 2-3). Veguilla further avers that he never discussed or agreed to pay Andino commissions on monies earned, on income received, or agreements signed after termination (*Id.* ¶ 4).

Although the undersigned will not weigh conflicting evidence when considering a motion for summary judgment, the Court *may* disregard a party's sworn statement that directly contradicts his deposition testimony when the discrepancy goes unexplained. In the Eleventh Circuit,

> [w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

9

*Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (holding that "a district court may find an affidavit that contracts testimony on deposition a sham when the party merely contradicts its prior testimony without giving an valid explanation"); *see also Bell v. City of Auburn,* 722 F. App'x 898, 900 (11th Cir. 2018) (statement in plaintiff's sworn declaration directly contradicted a clear answer he gave to an unambiguous deposition question, creating an inherent inconsistency with the prior testimony, and amounting to "a transparent effort to create a genuine issue of fact, affecting more than his credibility or persuasiveness."); *Hughes v. Priderock Capital Partners, LLC*, No. 9:18-CV-80110-ROSENBERG/REINHART, 2019 WL 341195, at *2 (S.D. Fla. Jan. 28, 2019) (concluding that the plaintiff's deposition testimony and/or written admissions could not be refuted by conflicting contentions in an after-the-fact declaration that the court found was created purely to oppose a dispositive motion and, therefore, appropriately, disregarded).

Here, the May 8, 2019 declaration directly contradicts Andino's deposition testimony on an issue of material fact, i.e., post-termination payments. The deposition was taken on April 4, 2019, before any motions for summary judgment were filed. Andino was asked pointedly and repeatedly whether he and Veguilla ever discussed whether his compensation would continue if he were terminated (ECF No. 50-14 at 62, 145, 147-49).

> [Q:]   Did you ever have a conversation or an agreement with [Veguilla] about whether or not you would get commissions if he fired you?
>
> * * * *
>
> [A:]   *No*.

(*Id.* at 62 (emphasis supplied)).  Later in the deposition, Andino was asked the question again:

10

[Q:] Can you recall, do you remember, a single conversation you had with [Veguilla] when you discussed whether or not you would get commissions after you were terminated?

\* \* \* \*

[A:] My conversations with Yandel was [sic] always you come in, the money that comes in, I'm going to get 15 percent. The deals that you are consulting and dealing with, you are going to get 15 percent. That was all the whole conversations that we had with Yandel.

[Q:] *So then you never went beyond that to say, you are going to get those commissions even if I fire you; correct?*

\* \* \* \*

[A:] *No, never discussed that.*

(*Id.* at 149 (emphasis supplied)).

Thus, Andino's May 8, 2019 declaration directly conflicts with the clear answer he provided to an unambiguous question during his April 4, 2019 deposition. Even though the particular point is of great importance to AMG's case, Andino never explained the inherent inconsistency. Furthermore, the Court notes that in another declaration that Andino signed, that one dated April 30, 2019, and filed in support of his and AMG's summary judgment motion against Veguilla (ECF No. 41-1), Andino failed to mention any discussion or agreement about the payment of post-termination compensation.

Given the foregoing, the undersigned will disregard the statements in Andino's May 8, 2019 declaration that the parties discussed and agreed to payment of compensation after the agreement terminated. AMG will not be permitted to use the declaration to introduce facts that are contrary to Andino's prior testimony, in an effort to create a genuine issue of material fact for purposes of dispositive motion review. *See, e.g., Liebman v. Metropolitan Life Ins. Co.*, 703 F. App'x 979, 982-83 (11th Cir. 2017) (affirming the district court's decision to disregard portions

11

of the plaintiff's sworn declaration submitted in opposition to summary judgment; although specific statements therein raised a factual dispute as to why the plaintiff was terminated, the district court found they were directly contrary to his prior deposition testimony, without any explanation for the inconsistency, and thus would not be considered in ruling on summary judgment); *Bell*, 772 F. App'x at 899-900 (affirming the district court's decision to disregard statements in the plaintiff's sworn declaration that directly contradicted the clear answer he previously gave to an unambiguous question in his deposition, without explanation for the inconsistency).

AMG points to the May 21, 2018 email from Matthew Greenberg ("Greenberg"), Veguilla's attorney (ECF No. 50-7), and Greenberg's April 3, 2019 deposition testimony (ECF No. 50-10) about said email, as further confirmation of the parties' oral agreement. The email, which was sent to Andino, Andres Martinez ("Martinez"), one of Veguilla's managers, and a few other members of Veguilla's team, but notably not to Veguilla, outlined the status of several entertainment industry contracts that he, Andino, and others were negotiating. At the end of the message was the following notation: "15% to [Andino] on gross in all the deals (to be built into deals). This has been discussed with [Veguilla] and [Martinez]." (ECF No. 50-7 at 3). In his deposition, Greenberg explained that "gross on all the deals" meant the gross amounts paid under the specific agreements described in the email, without reduction for other costs (ECF No. 50-10 at 57-58).

Greenberg's email and related testimony are not helpful to AMG; they do not establish that the parties "mutually assented to 'a certain and definite proposition' and left no essential terms open." *Merle*, 857 F. Supp. 2d at 1301 (citation omitted). Significantly, Greenberg testified that the notation about the 15% commission was based on a conversation Greenberg had earlier that

day with Andino, wherein Andino said, "I get 15 percent on these deals and this could be built into the contract and I've already discussed this with Andy [Martinez] and [Veguilla]." (ECF No. 50-10 at 57).  In other words, as Greenberg clarified, the notation reflected "what [Andino] wanted [his commission] to be." (*Id.* at 64).  Moreover, although "on more than one occasion after this email" Greenberg told Andino "that in order to build his percentage into the deal, I needed a written confirmation from [Veguilla] to do so and of what [Andino's] deal was[,]" Greenberg never received confirmation of any kind from Veguilla about Andino's commission (*id.* at 60, 64-65, 107, 109-10).[2]

The undersigned finds that Greenberg's May 21, 2018 email does not serve as written confirmation that the parties reached a meeting of the minds about AMG's compensation.  It is simply a summation of the status of ongoing negotiations in May 2018, the outcome of which, the parties hoped, would be lucrative entertainment industry contracts.  Viewing this evidence in the light most favorable to AMG, the email may state what percentage of gross earnings Andino was entitled to receive if those particular contracts were executed, but it says nothing about what would happen if his contract was terminated.  Nor does it say anything about any other aspect of AMG's compensation. The email merely highlights the unsettled nature of the financial arrangements between the parties.

AMG also cites Greenberg's testimony regarding a meeting he attended in August 2018 in Mexico to show that the parties already had an agreement which they agreed at that meeting to modify, specifically, to reduce AMG's commission from 15% to 12%, exclusively with respect to

---

[2]   Andino attended Greenberg's deposition telephonically.  His own deposition was taken the next day.  When asked whether Greenberg ever informed him that written confirmation from Veguilla was necessary before the 15% commission language would be added to the entertainment industry contracts then being negotiated, Andino stated that he did not recall Greenberg telling him that (ECF No. 50-14 at 40-43).

the entertainment industry contracts (ECF No. 50-18 at 5). Even though it is undisputed that Andino's compensation was a topic of conversation, Greenberg testified that he was not privy to the conversation between Veguilla and Andino which was conducted in another room and in Spanish, a language that Greenberg does not speak; moreover, there was no discussion afterwards about which specific agreement or agreements the 12% commission would apply to or what it would be based on; nor was there any discussion about whether or not the 12% would apply if Andino were terminated before the contracts were executed (ECF No. 50-10 at 73-77). Greenberg also testified that, to the best of his knowledge, Andino and Veguilla did not discuss post-termination commissions (*id.* at 114-15). Drawing all reasonable inferences in AMG's favor, none of Greenberg's testimony establishes that the parties reached mutual agreement on all essential terms of their contract.

    Other evidence AMG relies on to show a meeting of the minds is similarly unavailing. With regard to Martinez, AMG did not show how he was competent to testify about the particulars of the parties' agreement and, specifically, AMG's compensation. Martinez was not an authorized representative entitled to speak for Veguilla; he was not Veguilla's employee but rather an employee of La Leyenda, LLC ("La Leyenda"), a company that Veguilla owns (ECF No. 50-15 at 4-5). Even if Martinez were a competent witness, his testimony was insufficient to establish that Veguilla and AMG discussed and had a meeting of the minds as to all the terms necessary to create an enforceable contract between those parties. (*See, e.g., id.* at 129-132, 141, 143 (testifying that the arrangement with Veguilla was, and always had been, that if you were terminated, you would not be compensated for any deal that was not closed by that date; that was the deal Veguilla had with him (Martinez) as well as with Andino).)

After a thorough review of the record in the case, the undersigned finds that AMG has not satisfied its burden of proof here. Even if the testimony and documentary evidence did create a genuine dispute about some of the terms in the alleged oral agreement, such as what portion of Veguilla's income would form the basis of AMG's commission on the then-unexecuted entertainment industry agreements, the record is clear that there was no meeting of the minds with regard to post-termination payments to AMG. The continuation of compensation beyond the term of the parties' agreement is an essential term, indeed, it forms the basis of AMG's claims.

Nor is the record clear on what services the parties agreed AMG would perform for Veguilla. Vague statements in Andino's May 8, 2019 declaration that AMG helped oversee and provide advice to Veguilla about his music career by, for example, "advising as to the types of deals in the entertainment industry into which [Veguilla] had already entered and was attempting to enter and negotiate, advising and counseling as to the structure and terms of all such deals and the ability to renegotiate any such deals. . ." (ECF No. 50-1 at 3 ¶ 9) are insufficient, particularly when Andino was unable in his deposition to meaningfully elaborate upon any of the specific activities actually performed. (*See, e.g.,* ECF No. 50-14 at 109-110, 112-13, 114-123, 134-35).

Having failed to identify significant, probative evidence that the parties reached agreement on all essential terms of the agreement, the undersigned concludes that AMG cannot prove that the parties formed an enforceable oral agreement.[3] AMG cannot succeed on Counts I, III, and IV of the Counterclaim and, therefore, Veguilla is entitled to summary judgment on each of these counts.

---

[3] Further supporting the Court's determination that an enforceable agreement does not exist is the conflicting evidence as to whether Andino or AMG is the party that contracted with Veguilla. Veguilla sued both Andino and AMG though the Court notes that Veguilla failed from the beginning to describe with any particularity the role each played in the events at issue here. At one point, Veguilla was unequivocal that his agreement was with Andino, and not with AMG (ECF No. 50-19 (Plaintiff's Answers to Defendants' First Set of Requests for Admission) at 11-13, 16-

b.  Count II of the Counterclaim

In Count II of the Counterclaim, AMG alleged that it performed personal management services for Veguilla who received, and continues to receive, the benefit of AMG's services in the form of income from record and music or other entertainment industry activities, but that Veguilla failed to compensate AMG for said services, leading to AMG's claim for *quantum meruit* relief.

To survive Plaintiff's Motion for Summary Judgment on this claim, AMG must establish the following: 1) that AMG conferred a benefit on Veguilla; 2) that Veguilla knew about the benefit; 3) that Veguilla accepted the benefit conferred; and 4) the circumstances are such that it would be inequitable for Veguilla to retain the benefit without paying fair value for it. *Merle*, 857 F. Supp. 2d. at 1305-1306 (citing caselaw from this Circuit that sets out the elements of a *quantum meruit* claim). The claim is not based upon a finding of a valid contract but rather upon the "legal fiction [of] an obligation created by the law without regard to the parties' expression of assent by their words or conduct." *Id.* at 1306 (citation omitted). "Many courts have allowed brokers to recover in *quantum meruit* when a principal accepts a broker's services but the contract proves unenforceable for lack of agreement on essential terms, such as the amount of the broker's commission." *Id.*

The undersigned has painstakingly reviewed the record for evidence of what the parties agreed in October 2017 that AMG and/or Andino would do, and the activities that AMG and/or Andino actually performed in furtherance of the parties' agreement. AMG has not identified the

---

17). Later, however, Veguilla averred that he engaged Andino *or* AMG as his manager and paid commissions to Andino *or* AMG (ECF No. 39-3 (Veguilla Affidavit) at 1). Meanwhile, only the corporate Defendant, AMG, countersued Veguilla, with the individual Defendant, Andino, steadfastly maintaining that the oral agreement was between AMG and Veguilla (ECF No. 41-1 (Andino Declaration) at 1-2 ¶¶ 9, 19).

work it performed for Veguilla for which it was not paid. Importantly, AMG is not claiming it was underpaid while working for Veguilla, only that it is entitled to commissions on income that Veguilla earned after termination.

In reviewing the competing statements of disputed and undisputed facts, and exhibits cited therein, one conclusion emerges: just as the record does not evidence the existence of an express contract between these parties, so too it does not evidence the specific work that AMG and/or Andino performed for which AMG seeks recovery in Count II. AMG simply failed to sustain its burden of proof on this claim. AMG's opposition to Veguilla's summary judgment motion strenuously disputes Veguilla's assertion that its services required talent agency licensure. In an effort to prove what it did *not* do, AMG failed to prove those services it *did* provide that would support its claim in *quantum meruit*.

For the reasons discussed above, AMG cannot succeed as a matter of law on claims based on breach of an oral agreement or *quantum meruit*. Because the four counts of the Counterclaim rest on one of those two theories, AMG cannot prevail in this case. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment be granted as to Counts I-IV of the Counterclaim. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) ("Although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if he fails to satisfy one of the elements of a prima facie case.").

2. <u>Plaintiff's Motion for Partial Summary Judgment on Counts II and IV of the Amended Complaint and Defendant's Motion for Summary Judgment on All Counts of the Amended Complaint</u>

The aforementioned determination on the Counterclaim does not end the undersigned's inquiry. When faced with cross-motions for summary judgment, a court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is

under consideration. *Feliz v. United Parcel Servs., Inc.*, No. 16-21042-CIV-Scola, 2017 WL 5634304, at * 4 (S.D. Fla. May 10, 2017) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.2d 1328, 1331 (11th Cir. 1984)). The standard of review is the same as when considering a single motion for summary judgment, i.e., a grant of summary judgment is not warranted unless one of the parties demonstrates it is entitled to judgment as a matter of law, on facts that are not genuinely disputed. *Id*. (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

Accordingly, the undersigned turns to Veguilla's Amended Complaint. Each of the four counts therein relies in part on the application of Florida's Talent Agency Act. Veguilla cites *Union Entm't, LLC v. Gutierrez*, No. 12-041918-CA-06 (Fla. 11th Cir. Ct. Aug. 22, 2014) (order granting summary judgment), *aff'd*, 173 So. 3d 980 (Fla. 3d DCA 2015) (*per curiam*), for the proposition that, where a talent agent performs services for a musician without satisfying the licensing requirement of the statute, the contract between the parties is illegal and invalid, and will not be recognized or enforced by the court; nor can the talent agent recover in equity from the court, as he comes with unclean hands.

This is a legal issue of first impression in this Circuit.[4] However, before considering whether AMG's and Andino's undisputed lack of a license precludes recovery by Veguilla, the undersigned endeavored first to determine whether the statute even applies to them. In responding to summary judgment, Andino and AMG disputed that either acted as a talent agent which is defined as "any person who, for compensation, engages in the occupation or business of procuring

---

[4] Although the issue was *raised* in *TV Serv. ZAO v. NEW Talent Agency & Mgmt, Inc.*, No. 12-20317-CIV, 2013 WL 118306, at *9-*10 (S.D. Fla. Jan. 9, 2013) (plaintiff alleged it was entitled to summary judgment on a breach of contract counterclaim because the defendants had acted as unlicensed talent agents in violation of § 468.403(1), rendering any contracts they entered into void), the Court concluded it was unnecessary to address the issue given its determination that there was no valid contract between the plaintiff and defendants that plaintiff breached.

or attempting to procure engagements for an artist." Fla. Stat. § 468.401(1). As previously discussed, because the specific activities that AMG or Andino performed for Veguilla are in dispute, there is a genuine issue of material fact as to whether Fla. Stat. § 468.403(1) applies in this case. That, then, precludes a grant of summary judgment on any of the counts of the Amended Complaint.

However, during the June 18, 2019 hearing, Plaintiff's counsel expressed his strong preference for a final order on summary judgment. Toward that end, and in light of the undersigned's statement on the record that the evidence appeared insufficient to find the existence of an express oral contract (though the undersigned also explained that careful consideration would be given to the record citations and arguments advanced that day by defense counsel (which it was)), Plaintiff's counsel voluntarily withdrew Counts I, III, and IV of the Amended Complaint. However, because Count II was not withdrawn, whether intentionally or through oversight, the undersigned recommends that Veguilla's Motion for Partial Summary Judgment as to Count II of the Amended Complaint, and AMG's Motion for Summary Judgment on that same count, be denied. The undersigned further recommends that the remainder of Plaintiff's summary judgment motion and AMG's motion (relating to Counts I, III, and IV) be denied as moot.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that:

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 38) be **GRANTED in part and DENIED in part** as follows:

    a. Plaintiff's Motion be **GRANTED** as to Counts I-IV of the Counterclaim; judgment be entered for Plaintiff and against Defendant/Counter-Plaintiff AMG

       on all counts of the Counterclaim; and the Counterclaim be **DISMISSED with prejudice**.

       b. Plaintiff's Motion be **DENIED** as to Count II of the Amended Complaint; and **DENIED as moot** as to Count IV of the Amended Complaint, in light of Plaintiff's counsel's *ore tenus* withdrawal of that claim;

2. Defendant's Motion for Summary Judgment (ECF No. 41) be **DENIED** as to Count II of the Amended Complaint; and **DENIED as moot** as to Counts I, III, and IV of the Amended Complaint, in light of Plaintiff's counsel's *ore tenus* withdrawal of those claims.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 5th day of August, 2019.

                                                LAUREN LOUIS
                                                UNITED STATES MAGISTRATE JUDGE

The Honorable Federico A. Moreno
Counsel of Record