UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-24793-CIV-MORENO

LLANDEL VEGUILLA, professionally known
as "YANDEL",

    Plaintiff,

vs.

EDGAR ANDINO and ANDINO
MARKETING GROUP, INC.,

    Defendants.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE LOUIS'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Lauren F. Louis, United States Magistrate Judge, for a Report and Recommendation on the parties' cross-motions for summary judgment. The Magistrate Judge filed a Report and Recommendation with respect to each motion for summary judgment. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge Lauren F. Louis's Report and Recommendation is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that Plaintiff's Motion for Summary Judgment is GRANTED with respect to counts one through four of Defendant Andino Marketing Group's counterclaim, and thus those counts are DISMISSED with PREJUDICE. Having reviewed Defendant's objections, the Court finds that Defendant still fails to provide the requisite evidence demonstrating the existence of a contract between the parties, such that the Defendant would receive a commission for any income

Plaintiff earned after September 5, 2018, the date of Defendant's termination. Under Florida law, in order to prevail on a breach of contract claim, a party must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). That same court explains that to satisfy the first requirement of the existence of a contract, a party must prove: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.*

To prove the existence of a contract, Defendant points to the deposition testimony of Matthew Greenberg, Plaintiff's attorney during the relevant time period who was familiar with the parties' business relationship. That testimony, Defendant argues, shows that there was a valid and enforceable oral contract between the parties in which Plaintiff would pay the Defendant a fifteen percent commission based on net income. But, Defendant misses the mark—neither that testimony, or any testimony by any witness in this case—speaks to whether there was an actual agreement for the Defendant to receive that same commission (or any commission, for that matter) after termination. Without proof of a meeting of the minds over this essential term, which is integral to counterclaims one, three, and four, those counterclaims fail on their face. As the Fourth District Court of Appeal aptly wrote, "[a] meeting of the minds of the parties on all the essential elements is a prerequisite to the existence of an enforceable contract. . . ." *Bus. Specialists, Inc. v. Land & Sea Petrol., Inc.*, 25 So. 3d 693, 695 (Fla. 4th DCA 2010) (second alteration in original) (quoting *Acosta v. Dist. Bd. of Miami-Dade Cmty. Coll.*, 905 So. 2d 226, 228 (Fla. 3d DCA 2005)).

Perhaps Defendant's best piece of evidence in this case, again raised in the objections, is attorney Greenberg's testimony at deposition noting that "Edgar [Andino] and Yandel went off into another part of the room I think and spoke to each other in Spanish which I do not speak; and then they spoke for a few minutes and they came back and I believe it was Edgar that announced,

2

okay, we're agreed. I get twelve percent. And as I recall, you know, Yandel and Andy indicated an assent to that. And I was like okay, great, and then we talked about it being built into the agreements." Even viewing this evidence in a light most favorable to the Defendant, just as Magistrate Judge Louis found, there is still no evidence, in this recounting, that the parties agreed that Defendant would specifically receive post-termination commissions. Attorney Greenberg even said, a few sentences later, "I don't know that we articulated [the supposed deal] with specificity. I don't recall whether we said, okay, that applies to this agreement, that agreement and the other agreement."[1] Regardless, after review, there is no evidence that any of the four deals Plaintiff signed after Defendant's termination provided for commissions to Defendant.

If anything, the evidence in this case proves the opposite: that there was never a meeting of the minds regarding whether Defendant would continue earning commissions after termination. Defendant Edgar Andino unequivocally admitted during a deposition the lack of such agreement, answering in the negative when asked: "Did you ever have a conversation or an agreement with Yandel about whether or not you would get commissions if he fired you."[2] Neither did Defendant Andino ever attest to whether Plaintiff specifically promised to pay the Defendant commissions for the four post-termination deals for which Defendant now seeks commissions. Contrary to Defendant's renewed objections, Magistrate Judge Louis correctly disregarded Defendant Andino's later sworn statement in an affidavit attempting to retract these claims at deposition. Notably, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue

---

[1] Further, attorney Greenberg clarified these claims at deposition, noting that this "assent" would only be effective if put in writing. He explained, "I advised [Defendant Andino] that in order to build his percentage into the deal, I needed a written confirmation from Yandel to do so and of what Edgar's deal was."

[2] Defendant Andino was asked the same question a few more times throughout his deposition, and consistently answered that the parties did not discuss the issue of post-termination commissions.

3

with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Like Defendant Andino, attorney Greenberg also described how, to his knowledge, there was never an agreement over whether Defendant Andino would receive post-termination commissions, or commissions for the four contracts Plaintiff executed after Andino's firing. Other witnesses, including Plaintiff and Andres Martinez, the latter who served as a commissioned agent for Plaintiff's company La Leyenda, LLC during the relevant time period, did as well. *See Perrine v. Innerpac, Inc.*, No. 1:06-CV-2329, 2008 WL 11407263, at *5-6 (N.D. Ga. June 16, 2008) (holding, albeit with respect to a written contract, that because "there is simply no contract language that can be read to require [the defendant] to pay post-termination commissions to [the plaintiff]" and because "[the plaintiff] has specifically admitted that he was never promised post-termination commissions by anyone at [the defendant's company]," "[t]he court will not read such an obligation into the Employment Agreement where it plainly does not exist.").

Just as the record does not evidence the existence of an oral contract providing for the payment of post-termination commissions, the record does not evidence any proof for Defendant's claim for quantum meruit. To prove a claim for quantum meruit under Florida law, "a plaintiff must . . . show that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009) (alteration in original) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999)). The inquiry is a "highly individualized" one, *see id.* at 1195, placing a "tougher burden" on the moving party who must identity the services and benefits rendered meriting a

reasonable expectation of payment. *W.R. Townsend Contracting, Inc.*, 728 So. 2d at 305. Here, such an identification is lacking. As Magistrate Judge Louis found, Defendant failed to specify the work it performed for which it had a reasonable expectation of payment. The magistrate judge generously provided the Defendant with multiple chances to identify that work during the June 18, 2019 hearing on the cross-motions for summary judgment, but Defendant's counsel repeatedly failed to do so, only managing to provide the judge with vague and conflicting answers at best.

While the Court grants summary judgment as to counterclaims one through four, the Court declines to grant summary judgment as to Plaintiff's second claim in his amended complaint arising under Florida's Talent Agency Act, § 468.403, Fla. Stat. (2019). In Florida, "a person may not advertise or otherwise hold herself or himself out as a 'talent agency' or 'talent agent' unless the person is licensed under this section as a talent agency." § 468.403(1), Fla. Stat. A talent agent "means any person who, for compensation, engages in the occupation or business of procuring or attempting to procure engagements for an artist." § 468.401(1), Fla. Stat. As held above, because the nature of Defendant Andino's work with Plaintiff is conflicting, there remains a genuine issue of material fact regarding whether Defendant Andino qualifies as a talent agent under the statute.

Finally, because the Plaintiff withdrew claims one, three, and four of his amended complaint at the June 18, 2019 hearing, the Court need not decide the parties' cross-motions for summary judgment with respect to these claims.

Accordingly, based on the Court affirming the Report and Recommendation, it is

**ADJUDGED** that

(1). Plaintiff's Motion for Summary Judgment with respect to Defendant's four counterclaims is GRANTED, and those claims are DISMISSED with PREJUDICE;

(2). Plaintiff and Defendant's cross-motions for summary judgment with respect to count

5

two of Plaintiff's amended complaint are DENIED;

(3). Plaintiff and Defendant's cross-motions for summary judgment with respect to Plaintiff's remaining claims in the amended complaint (counts one, three, and four) are DENIED as MOOT given Plaintiff's withdrawal of those claims.

DONE AND ORDERED in Chambers at Miami, Florida, this ___10___ of November 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge Lauren F. Louis

Counsel of Record